UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SHERRI BURRELL,

        Plaintiff,                    CIVIL ACTION NO. 07-13930

        v.                               DISTRICT JUDGE GERALD E. ROSEN

COMMISSIONER OF               MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action for judicial review of the defendant's decision denying plaintiff's application for social security disability benefits. Plaintiff alleged that she became disabled from June 11, 2003, due to carpal tunnel syndrome and back, leg, and neck pain. (Tr. 41-43, 53) Plaintiff was 50 years old at the time of her alleged onset date and 54 years old at the time of the ALJ decision. She has a high school education and one year of college with past relevant work as a production worker. The ALJ determined that plaintiff had severe impairments of degenerative joint disease and carpal tunnel syndrome and was unable to perform her past unskilled, light work. However, plaintiff retained the residual functional capacity to perform work that exists in significant numbers in the economy and therefore she was not disabled. Plaintiff contends that this finding is not supported by substantial evidence. Plaintiff contends that the ALJ did not accurately assess her credibility and that he did not accurately the assess the

- 1 -

medical evidence. Thus, his hypothetical to the vocational expert was flawed. Plaintiff contends that she is entitled to benefits and that, at a minimum, her case should be remanded to the agency to assess whether she can perform sustained work. For the reasons discussed in this Report, it is recommended that the decision denying benefits be affirmed.

*Legal Standards*

    *A. Disability Evaluation*

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims. 20 C.F.R. § 404.1520. In Foster, 279 F.3d at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

*B. Standard of Review*

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is

substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

*Analysis*

In June, 2003, plaintiff was injured in an auto accident. She underwent 26 sessions of physical therapy from August through October, 2003 and was discharged with her goals met or "mostly met." (Tr. 95) Upon discharge, plaintiff advised that her pain was 4/10 and that she increased her endurance for activities of daily living. Flexion was 90 percent of normal, extension 80 percent, lateral flexion to the right and left was normal as was right and left rotation. Bilateral straight leg raises were 80 percent pain-free. She was having only occasional pain in the left calf. Id. Her gait was normal. Plaintiff agreed to continue with her home exercise program and continue her workouts at McLaren Wellness. (Tr. 96) She was given restrictions to return to work but no jobs we4re available with those.

Despite these findings, plaintiff testified at the November 14, 2006 hearing that she was disabled due to pain. She stated that she had pain from a back, hand, and shoulder injury. (Tr. 181) She could stand for 20 to 30 minutes and walk about 30 minutes. She did not use an assistive device. She could sit for 20 to 30 minutes, lift ten pounds, and could bend and stoop. Two fingers of each hand were numb resulting in difficulty using her hands. It hurt to raise her hand above her head and she had slight trouble bending at the waist. Plaintiff stated that her left leg was numb and she had trouble climbing stairs. She could bathe and dress, did household chores, including cooking, dishes and laundry. (Tr. 181-184) Plaintiff went to church twice a week and drove to visit her mother three times a week. She also drove to shop and to visit her

daughter at Wayne State University about 75 miles away. Plaintiff testified that she had not taken any trips longer than 75 miles away since she stopped working in 2003.[1] Plaintiff had no side effects from medication and had not been to the emergency room or for overnight hospitalization since she stopped work. (Tr. 185, 188)

Plaintiff saw a number of doctors after her discharge from physical therapy. (Tr. 95-96) In November, 2003, plaintiff saw Dr. Boike, M.D., who noted that prior to the accident, plaintiff was in excellent general health. (Tr. 116) A July 2003 lumbosacral MRI indicated no abnormalities. (Tr. 116) On examination, Dr. Boike reported all normal findings with the exception of a "slight" decrease in range of motion in the low back. Id. This was assessed as musculoskeletal/mechanical and it was anticipated that plaintiff would respond quickly to a program of stress management and relaxation training. In December 2003, plaintiff saw Dr. Boike again, complaining of low back pain. On examination, she had normal strength in both lower extremities and her spine flexibility was normal. (Tr. 115) Dr. Boike prescribed Ultram, but he was concerned because plaintiff continued to complain of back pain despite "a lack of any significant finding on examination." (Tr. 115) In January 2004, plaintiff told Dr. Boike that her overall ability to function had improved but that she had ongoing back pain. Plaintiff's examination was normal. There was no objective evidence of spinal or neurological difficulties. (Tr. 114) This was the last time plaintiff saw Dr. Boike.

---

[1]Plaintiff apparently forgot the cruise she had taken six months earlier. Medical records indicate that in March, 2006 plaintiff sought treatment from Dr. Miguel Perez-Pascual, M.D., complaining that while on a cruise, she developed bronchitis and a cough and left-sided chest pain. (Tr. 168)

Plaintiff then saw, in January 2004, Dr. George Dass with complaints of sore elbows and bilateral numbness and tingling in her hands. Plaintiff's EMG and nerve conduction study in April 2003 showed only "mild" CTS. She had no loss of sensation to light touch. (Tr. 125) A repeat EMG and nerve conduction study in February 2004 showed bilateral ulnar neuropathy at the elbows and only mild carpal tunnel syndrome at the wrist. (Tr. 126-7) In May 2004, Dr. Dass advised plaintiff that CTS surgery would relieve the numbness and tingling but not the pain. (Tr. 124)

Thereafter, plaintiff saw Dr. Galvin Awerbuch, M.D. (Tr. 132-134) She complained to him of pain in her back, shoulders, arms, and arm numbness. His impression was bilateral CTS, bilateral cubital tunnel syndrome, post-traumatic back pain with persistent soft tissue dysfunction and radiculopathy, and bilateral shoulder trauma with internal derangement. (Tr. 133) Dr. Awerbuch felt that plaintiff should remain off work and needed to limit her daily activities and needed to avoid "heavier" household activities. Plaintiff's repeat EMG in May 2004 showed bilateral carpal tunnel syndrome and bilateral ulnar neuropathy at the elbows. (Tr. 135) In July 2004, plaintiff returned to Dr. Awerbuch alleging pain in her lower back, legs and hips, as well as pin in her right shoulder, elbows, wrists, and hand. She stated that she had limited ability to grasp, grip, and use her arm. (Tr. 128) Dr. Awerbuch recommended an EMG to see what was wrong with her legs. The EMG was normal. (Tr. 131)

Also in July 2004, plaintiff saw Jerome Cuillo, M.D. (Tr. 136-7) On examination plaintiff walked with the left shoulder forward, in a protective stance. Left shoulder x-rays showed a "hook" (bone spur) and narrowing of the A/C joint. Physical therapy was

recommended with possible left shoulder surgery to follow. (Tr. 137) In December 2004, Dr. Cuillo explained that physical therapy would tighten the shoulder. (Tr. 149)

In September 2004, Dr. Choi, M.D., reviewed plaintiff's medical records for the state agency. He opined that plaintiff retained the ability to perform light work, but was limited to occasional climbing and frequent (not constant) balancing, stooping, kneeling, crouching, and crawling. (Tr. 141) Due to limited use of her left shoulder, she was restricted to only occasional reaching with her left arm and frequent reaching of her right arm. (Tr. 140-142) Plaintiff could frequently handle and finger, but should avoid vibration of the upper extremities. He noted that although her allegations were partially consistent with the medical findings, most of her objective tests were normal. (Tr. 144)

In April 2005, Dr. Awerbuch recommended another nerve conduction study. This showed bilateral ulnar neuropathies at the elbow and bilateral CTS. (Tr. 164) In July 2005, plaintiff told Dr. Awerbuch that she needed to lie down frequently, could not stay in one position for a long time, and, upon seeing him later in that month, that she had pain in the back that radiated to her hips. On examination, she had reduced range of motion, mild spasm, and pain with extension of her lower back, as well as positive Tinel's sign at the wrist and elbows. (Tr. 162) She was prescribed a course of physical therapy and home exercises. In October 2005, Dr. Awerbuch told her to limit activities and wear braces for wrist and elbow support. (Tr. 160) He gave her injections which were helpful but did not fully relieve the pain.

In March 2006, plaintiff saw Miguel Perez-Pascual, M.D., and told him that while she was on a cruise, she developed bronchitis and a cough and left sided chest pain. (Tr. 168) Her

EKG was completely normal and the doctor felt that plaintiff's pain was non-cardiac. (Tr. 107, 172-173) A June 2006 bone density study showed low bone mass (osteopenia). She was prescribed Calcium and Actonal. (Tr. 169-171)

In July 2006, plaintiff returned to Dr. Awerbuch for more injections which she found helpful. (Tr. 155) A lumbosacral x-ray in July 2006 revealed only minimal degenerative changes, mild generalized annulous bulge with slight effacement and spinal stenosis. (Tr. 150) Plaintiff had more injections in October 2006. In November 2006, Dr. Awerbuch completed a form that indicated that since May 2004 plaintiff could lift less than ten pounds frequently and occasionally, she could stand/walk less than two hours a day and sit for less than six hours in a workday. (Tr. 175) She had moderate restrictions in her ability to push/pull, could not use vibrating or power tools, and could not use a forceful grip, perform overhead work, or climb, bend, or stoop. Her work would disrupt 40 hours a month. Id.

*ALJ's Assessment of Plaintiff's Credibility*

Plaintiff claims the ALJ did not properly evaluate her complaints of disabling pain. The ALJ found they were not fully credible. Pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984). Therefore, a determination of disability based on pain depends largely on the credibility of the plaintiff. Houston, 736 F.2d at 367; Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997); Villarreal v. Secretary of HHS, 818 F.2d 461, 463 (6th Cir. 1987). Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly. Villarreal, 818 F.2d at 463 and 464. In

Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir. 1986) and the subsequent Social Security Act modification, 20 C.F.R. § 404.1529 (1995), incorporate the standard. A finding of disability cannot be based solely on subjective allegations of pain. There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. Jones v. Secretary of HHS, 945 F.2d 1365, 1369 (6th Cir. 1991).

Here, plaintiff has a history of back pain. While she has some mechanical back pain and low bone mass, her MRIs were normal. X-rays and a CT scan showed minimal degenerative changes, mild bulging at L4-5 and L5-S1 and stenosis at L3-4. She also has a history of numbness and tingling in her hands since 1990 and the EMG showed mild carpal tunnel syndrome. Only exercise and conservative treatment have been recommended. She drives, shops, cooks, walks for exercise for 30 minutes, runs errands, and is able to take a cruise. The ALJ's assessment of her credibility regarding her disabling pain is supported by substantial evidence.

*The ALJ Accurately the Assessed the Medical Evidence*

Plaintiff contends that she could only do sedentary work and she argues directing a conclusion that she is disabled per the Medical Vocational Guidelines. Since the ALJ limited her to lifting ten pounds, "the only real issue is [her] ability to walk and/or stand." (Brief 12) Here, plaintiff testified that she walks 30 minutes for exercise, her daily activities show that she gets up and walks at 5:30 am for her one-half hour fitness, she does stretching exercises for her back in

the evening, she washes clothes, visits, prepares meals, picks up her granddaughter, and shops. (Tr. 86, 87) This is consistent with Dr. Boike's instructions to be as active as possible. (Tr. 114)

The medical records indicate a lack of objective evidence of significant spinal or neurological difficulties. (Tr. 114) Although she has mild CTS, there is no atrophy or evidence of proximal median nerve compression. (Tr. 125) The ALJ properly gave little weight to Dr. Awerbuch's opinion in light of its inconsistency with other opinions and the objective testing. Additionally, Dr. Awerbuch's opinions seem to be intentionally inconsistent. First, he recommended exercises and physical therapy and then gave her injections and told her to limit her activities in November, 2005. Plaintiff felt well enough to take a cruise a few months later, suffering only from a cough developed on board. (Tr. 168)

*The Hypothetical Accurately Took Into Account the Medical Limitations*

The ALJ took plaintiff's alleged pain into account when he made findings that plaintiff could not perform her past relevant work which included repetitive use of the hands. He appropriately limited plaintiff to certain jobs at the exertional level of light work and the vocational expert identified a significant number of jobs that plaintiff could perform. These include security guard, cashier, sales clerk, general office clerk, and inspector. No medical evidence supports a contention that she would be unable to perform these jobs. On the contrary, substantial evidence, including plaintiff's daily activities, supports this determination.

*Conclusion*

Accordingly, the court recommends that plaintiff's motion for summary judgment be denied, defendant's motion granted and the decision denying benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan  
Virginia M. Morgan  
United States Magistrate Judge

Dated: June 17, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on June 17, 2008.

s/Jane Johnson  
Case Manager to  
Magistrate Judge Virginia M. Morgan